FILED

2014 Mar-12  PM 04:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | | |
|---|---|---|
| **PHILLIP COLLINS, as Co-Personal Representative of the Estate of Harvey Russell Collins, Jr., et al.,** | ] | |
| | ] | |
| **Plaintiffs,** | ] | |
| | ] | |
| v. | ] | **Case No.: 4:14-CV-0257-VEH** |
| | ] | |
| **MARTEN TRANSPORT, LTD., et al.,** | ] | |
| | ] | |
| **Defendants.** | ] | |

## MEMORANDUM OPINION

## I.   INTRODUCTION

Plaintiffs Phillips Collins and Lisa Collins Cross (the "Plaintiffs"), as co-personal representatives of the estate of Harvey Russell Collins, Jr. (the "Decedent"), originally filed this wrongful death action[1] in the Circuit Court of St. Clair County,

---

[1] Alabama's wrongful-death statute provides:

(a) A personal representative may commence an action and recover such damages as the jury may assess in a court of competent jurisdiction within the State of Alabama where provided for in subsection (e), and not elsewhere, for the wrongful act, omission, or negligence of any person, persons, or corporation, his or her or their servants or agents, whereby the death of the testator or intestate was caused, provided the testator or intestate could have commenced an action for the wrongful act, omission, or negligence if it had not caused death.

Alabama, on February 13, 2013. (Doc.1 ¶ 1; *see also* Doc. 1-5 at Ex. 5 at 3).[2] The case stems from a motor vehicle collision that occurred on December 3, 2012, on Interstate 59 near Springville, Alabama. (Doc.1-5 at Ex. 5 at 7 ¶ 7).

Defendants Dale Edward Monson ("Mr. Monson") and Marten Transport, Ltd. ("Marten") (collectively, the "Removing Defendants") removed Plaintiffs' lawsuit to this court on February 12, 2014, asserting diversity under 28 U.S.C. § 1332 as the basis for federal jurisdiction. (Doc. 1 ¶ 8). In relying upon the existence of diversity jurisdiction, the Removing Defendants contend that the court should disregard the in-state citizenship of their co-defendant, Richard Hull ("Mr. Hull"), on the basis that Plaintiffs have fraudulently joined him. (*Id.* ¶ 5).[3]

The court has before it Plaintiffs' Motion to Remand (Doc. 8) ("Remand Motion"),[4] their Unopposed Motion for Expedited Consideration (Doc. 9) ("Expedited Ruling Motion"), and their Motion for Sanctions (Doc. 10) ("Sanctions

─────────────────────

Ala. Code § 6-5-410(a).

[2] All page references to Doc. 1-5 correspond with the court's CM/ECF numbering system.

[3] Mr. Hull did not join in the removal. Mr. Hull did file a Motion for Summary Judgment (Doc. 3) in state court immediately before the Removing Defendants filed their petition. All page references to Doc. 3 correspond with the court's CM/ECF numbering system.

[4] All page references to Doc. 8 correspond with the court's CM/ECF numbering system.

Motion"), all of which were filed on February 18, 2014. The Removing Defendants filed their opposition (Doc. 12)[5] to the Remand Motion and response (Doc. 13) to the Sanctions Motion on March 3, 2014. Plaintiffs followed with their respective reply briefs on March 10, 2014. (Docs. 14, 15). Plaintiffs additionally filed a Motion To Strike (Doc. 16) ("Strike Motion") on March 10, 2014.

Because the court concludes that it lacks subject matter jurisdiction, Plaintiffs' Remand Motion is due to be granted. Further, the Expedited Ruling Motion is due to be granted, and the Strike Motion is due to be termed as moot. Finally, the court does not reach the merits of either the Sanctions Motion or of the Motion for Summary Judgment filed by Mr. Hull, and instead leaves the disposition of both of those motions to the sound discretion of the state court.

## II.    LEGAL STANDARDS

### A.    General Jurisdictional Principles

"It is by now axiomatic that the inferior courts are courts of limited jurisdiction. They are 'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress." *Univ. of S. Ala. v. Am.*

---

[5]  All page references to Doc. 12 correspond with the court's CM/ECF numbering system.

*Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)). "Accordingly, '[w]hen a federal court acts outside its statutory subject-matter jurisdiction, it violates the fundamental constitutional precept of limited federal power.'" *Univ. of S. Ala.*, 168 F.3d at 409 (quoting *Victory Carriers, Inc. v. Law*, 404 U.S. 202, 212, 92 S. Ct. 418, 425, 30 L. Ed. 2d 383 (1971)). "Simply put, once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue." *Univ. of S. Ala.*, 168 F.3d at 410.

"A necessary corollary to the concept that a federal court is powerless to act without jurisdiction is the equally unremarkable principle that a court should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings." *Univ. of S. Ala.*, 168 F.3d at 410. "Indeed, it is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." *Id.* (citing *Fitzgerald v. Seaboard Sys. R.R.*, 760 F.2d 1249, 1251 (11th Cir. 1985) (per curiam)).

Moreover, "[t]he jurisdiction of a court over the subject matter of a claim involves the court's competency to consider a given type of case, and cannot be waived or otherwise conferred upon the court by the parties. Otherwise, a party could 'work a wrongful extension of federal jurisdiction and give district courts power the Congress denied them.'" *Jackson v. Seaboard Coast Line R.R.*, 678 F.2d 992, 1000-

4

01 (11th Cir. 1982) (quoting *American Fire & Cas. Co. v. Finn*, 341 U.S. 6, 18, 71

S. Ct. 534, 542, 95 L. Ed. 702 (1951)) (footnote and citation omitted). Furthermore,

"[b]ecause removal jurisdiction raises significant federalism concerns, federal courts

are directed to construe removal statutes strictly." *Univ. of S. Ala.*, 168 F.3d at 411

(citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09, 61 S. Ct. 868,

872, 85 L. Ed. 1214 (1941)).

Lastly, Congress has decreed and the Supreme Court has confirmed that—with

the express exception of civil rights cases that have been removed— orders of remand

by district courts based upon certain grounds, including in particular those premised

upon lack of subject matter jurisdiction, are entirely insulated from review. More

specifically, § 1447(d) provides:

> An order remanding a case to the State court from which it was removed
> is not reviewable on appeal or otherwise, except that an order remanding
> a case to the State court from which it was removed pursuant to section
> 1443 of this title shall be reviewable by appeal or otherwise.

28 U.S.C. § 1447(d) (emphasis added); *see also Kirchner v. Putnam Funds Trust*, 547

U.S. 633, 642 , 126 S. Ct. 2145, 2154, 165 L. Ed. 2d 92,(2006) (recognizing that

"'[w]here the [remand] order is based on one of the grounds enumerated in 28 U.S.C.

§ 1447(c), review is unavailable no matter how plain the legal error in ordering the

remand'" (quoting *Briscoe v. Bell*, 432 U.S. 404, 413 n.13, 97 S. Ct. 2428, 2434 n.13,

53 L. Ed. 2d 439 (1977))); Milton I. Shadur, *Traps for the Unwary in Removal and Remand*, 33 no. 3 Litigation 43 (2007); *Powerex Corp. v. Reliant Energy Servs., Inc.*, 127 S. Ct. 2411, 2418 (2007) (holding that when "the District Court relied upon a ground that is colorably characterized as subject-matter jurisdiction, appellate review is barred by § 1447(d)").

### B.    Diversity Jurisdiction

The Removing Defendants premise their removal upon this court's diversity jurisdiction. "Diversity jurisdiction exists where the suit is between citizens of different states and the amount in controversy exceeds the statutorily prescribed amount, in this case $75,000." *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001) (citing 28 U.S.C. § 1332(a)). Therefore, removal jurisdiction based upon diversity requires:  (1) a complete diversity of citizenship between the plaintiff(s) and the defendant(s); and (2) satisfaction of the amount in controversy requirement.

### 1.    Citizenship Requirement

Diversity jurisdiction "requires complete diversity—every plaintiff must be diverse from every defendant." *Palmer v. Hosp. Auth.*, 22 F.3d 1559,1564 (11th Cir. 1994). "Citizenship, not residence, is the key fact that must be alleged in the complaint to establish diversity for a natural person." *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994).

## 2.    Fraudulent Joinder Principles

The dispute over satisfaction of the citizenship requirement in this case has to do with whether Plaintiffs have fraudulently joined the non-diverse co-defendant, Mr. Hull. "[W]hen there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant[,]" fraudulent joinder is established. *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). Relatedly, if fraudulent joinder is established, then the resident defendant is subject to dismissal as a party and its citizenship is disregarded for diversity requirement purposes. *See id.*

The Eleventh Circuit extensively addressed the issue of removal based on diversity jurisdiction when it is alleged that a non-diverse defendant has been fraudulently joined in *Crowe v. Coleman*, 113 F.3d 1536 (11th Cir. 1997). There the court stated:

> In a removal case alleging fraudulent joinder, the removing party has the burden of proving that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court. *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989). The burden of the removing party is a 'heavy one.' *B. Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. Unit A 1981).

*Crowe*, 113 F.3d at 1538.[6]

The standard is onerous because, absent fraudulent joinder, a plaintiff has the absolute right to choose his forum. That is, courts must keep in mind that the plaintiff is the master of his complaint and has the right to determine how and where he will fight his battle. As *Crowe* further recognized:

> This consequence makes sense given the law that "absent fraudulent joinder, plaintiff has the right to select the forum, to elect whether to sue joint tortfeasors and to prosecute his own suit in his own way to a final determination." *Parks v. The New York Times Co.*, 308 F.2d 474, 478 (5th Cir. 1962).[7]  The strict construction of removal statutes also prevents "exposing the plaintiff to the possibility that he will win a final judgment in federal court, only to have it determined that the court lacked jurisdiction on removal," *see Cowart Iron Works, Inc. v. Phillips Constr. Co., Inc.*, 507 F. Supp. 740, 744 (S.D. Ga. 1981) (quoting 14A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedures § 3721), a result that is costly not only for the plaintiff, but for all the parties and for society when the case must be re-litigated.

*Crowe*, 113 F.3d at 1538.

To establish fraudulent joinder of a resident defendant, the burden of proof on the removing party is a "heavy one[,]" *see Crowe*, 113 F.3d at 1538 (internal

---

[6]  Under the second prong of the fraudulent joinder test, the court must determine whether Plaintiffs have fraudulently pled facts relating to a party's citizenship in an effort to avoid diversity jurisdiction.  No issue related to the second prong exists in this case.  Accordingly, the court limits its analysis to the first inquiry.

[7]  In *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

quotation marks omitted) (quoting *B, Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. Unit A 1981)), requiring clear and convincing evidence and particularity in pleading. *Parks*, 308 F.2d at 478 (citing Barron and Holtzoff, *Federal Practice and Procedure*, § 103, p. 478). Although affidavits and depositions may be considered, the court must not undertake to decide the merits of the claim but must look to whether there is a <u>possibility</u> that a claim exists. More particularly, the *Crowe* court explained the framework for analyzing fraudulent joinder as:

> While 'the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed. R. Civ. P. 56(b),' [*B. Inc., v. Miller Brewing Co.*, 663 F.2d 545, 549 n.9 (5th Cir., Unit A 1981)], the jurisdictional inquiry 'must not subsume substantive determination.' *Id.* at 550. Over and over again, we stress that 'the trial court must be certain of its jurisdiction before embarking upon a safari in search of a judgment on the merits.' *Id.* at 548-49. When considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law. *See id*. '<u>If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court</u>.' *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440-41 (11th Cir. 1983), *superseded by statute on other grounds as stated in Georgetown Manor, Inc. v. Ethan Allen, Inc.*, 991 F.2d 1533 (11th Cir. 1993).

*Crowe*, 113 F.3d at 1538 (emphasis added).

In a later fraudulent joinder decision, the Eleventh Circuit elaborated:

> The fact that the plaintiffs may not ultimately prevail against the

individual defendants because of an insufficient causal link between the defendants' actions and the plaintiffs' injuries does not mean that the plaintiffs have not stated a cause of action for purposes of the fraudulent joinder analysis. In a fraudulent joinder inquiry, 'federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law.' *Crowe*, 113 F.3d at 1538.

*Pacheco de Perez v. AT & T Co.*,139 F.3d 1368, 1380-81 (11th Cir. 1998); *see also*

*Tillman v. R.J. Reynolds Tobacco*, 340 F.3d 1277, 1279 (11th Cir. 2003) ("[I]f there

is a possibility that a state court would find that the complaint states a cause of action

against any of the resident defendants, the federal court must find that the joinder was

proper and remand the case to state court.").

## III.   ANALYSIS

### A.   Methods of Removal Under § 1446(b)

As clarified in their opposition, the Removing Defendants rely upon 28 U.S.C.

§ 1446(b)(3) as their procedural mechanism for removal. *See id.* ("Except as provided

in subsection (c), if the case stated by the initial pleading is not removable, a notice

of removal may be filed within 30 days after receipt by the defendant, through service

or otherwise, of a copy of an amended pleading, motion, order or other paper from

which it may first be ascertained that the case is one which is or has become

removable.").[8] The specific procedural provision upon which a removing party relies is critical because within the Eleventh Circuit the applicable law is significantly different in terms of what that defendant must demonstrate in order to show diversity jurisdiction and remain in federal court. *Compare Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1188 (11th Cir. 2007) (purportedly addressing requirements of removal under

---

[8]   The first way to remove under § 1446(b) is when "the jurisdictional grounds for removal are apparent on the face of the initial pleadings." *Holley v. Madison Industries, Inc. of Georgia*, No. 4:12–CV–2243–VEH, 2012 WL 3771909, at *3 (N.D. Ala. Aug. 27, 2012); *see also* 28 U.S.C. § 1446(b)(1) ("The notice of removal . . . shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief . . . ."). This initial method was commonly called a "first paragraph" removal, while its latter ascertainable-related counterpart—§ 1446(b)(3)—was known as a "second paragraph" removal. Despite those now antiquated references because of the restructuring of § 1446(b)'s subparts, the legal principles developed under the varying frameworks for removal are still applicable.

   The now-defunct distinction between "first paragraph" and "second paragraph" removals is rendered obsolete by a clearer version of the removal statute, as amended by the Federal Courts Jurisdiction and Venue Clarification Act of 2011, PL 112–63, December 7, 2011, 125 Stat. 758, which added subsections to 28 U.S.C. § 1446(b). The substance of the removal procedure is not affected by the stylistic changes to the statute; therefore, the previous case law discussing "first paragraph" and "second paragraph" removals is still applicable despite its outdated terminology. *See, e.g., Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 747 (11th Cir. 2010) ("As we will explain, *Lowery* was a case that involved the removal procedures in the second paragraph of 28 U.S.C. § 1446(b), and the decision must be read in that context."); *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1211 (11th Cir. 2007).

*Holley*, 2012 WL 3771909, at *3 n.2.

§ 1446(b) generally, but only actually dealing with a § 1446(b)(3) (formerly known as a second paragraph) removal as removing party's petition was filed subsequent to several amendments by plaintiffs in state court), *with Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744,747 (11th Cir. 2010) (distinguishing *Lowery* and addressing requirements of a § 1446(b)(1) (formerly known as a first paragraph) removal), *and Pretka*, 608 F.3d at 747 ("While we may consider *dicta* for its persuasive value, we are not persuaded to follow *Lowery*'s *dicta* about the type of evidence a defendant that removes a case under the first paragraph of § 1446(b) may use in establishing the requisite amount in controversy."), *and Roe v. Michelin North America, Inc.*, 613 F.3d 1058, 1060 n.2 (11th Cir. 2010) ("Because Michelin relies on Roe's initial complaint as the basis for its removal, this case is governed by the first paragraph of § 1446(b)."), *and Roe*, 613 F.3d at 1061 n.4 ("This opinion considers removal only under the first paragraph of § 1446(b); it does not address the effect of [*Lowery*], on second-paragraph cases.").

Plaintiffs' Remand Motion makes three primary arguments:  (i) the Removing Defendants' petition is procedurally deficient and untimely under § 1446(b)(3); (ii) the Removing Defendants have not satisfied their fraudulent joinder burden; and (iii) the Removing Defendants have not shown that the amount in controversy has been met. (Doc. 12 at 4). The court turns to fraudulent joinder first and finds that the

12

Removing Defendants have failed to meet that demanding standard. The court also concludes that, because this is a § 1446(b)(3) removal governed by *Lowery*, the amount in controversy requirement is lacking.[9]

### B.   Application of Fraudulent Joinder Standard

The Removing Defendants premise satisfaction of their fraudulent joinder burden upon a pending Motion for Summary Judgment, including, in particular, the evidence contained in a supporting affidavit that was filed by their co-defendant, Mr. Hull, in state court, immediately prior to their removal.[10] Nowhere within their petition or their opposition to the Remand Motion do the Removing Defendants cite to any binding precedent for the proposition that an undecided and yet to be opposed Motion for Summary Judgment filed by a resident co-defendant is sufficient not only to trigger a timely removal under § 1446(b)(3), but also to substantively establish

---

[9] As a result, the court does not reach an analysis of Plaintiffs' procedural challenges offered in support of their remand request.

[10] The court acknowledges that the Motion for Summary Judgment filed by Mr. Hull references evidence beyond just his affidavit. (Doc. 3 at 2 (relying expressly upon "deposition testimony of the Alabama State Trooper John Vincent, Defendant Dale Monson, Dr. Speeker-Strickland, affidavit testimony of defendant Richard Hull, and (portions of) the Traffic Homicide Investigation Report prepared by Trooper Vincent")).

fraudulent joinder of that party.[11]

In an effort to verify the validity *vel non* of the Removing Defendants' position, the court has reviewed *Parks*, a pre-*Bonner* controlling decision which clarifies that fraudulent joinder is not appropriate when the jurisdictional underpinnings relied upon by the removing party involve questions of credibility and/or the relative weight of evidence.[12]

> That the defeat of removal might have been a motive in joining Short is not important, if in good faith he is sought to be held liable. *Mecom v. Fitzsimmons Drilling Co.*, 284 U.S. 183, 52 S. Ct. 84, 76 L. Ed. 233, 77 A.L.R. 904, and cases cited. . . .
>
> In *Chicago, Rock Island & Pacific Ry. Co. v. Schwyhart*, 1913, 227 U.S. 184, 33 S. Ct. 250, 57 L. Ed. 473, Mr. Justice Holmes speaking for the court in an unanimous opinion laid down the following applicable rule:
>
>> 'On the question of removal we have not to consider more than whether there was a real intention to get a joint judgment and whether there was a colorable ground for it shown as the record stood when the removal was denied.'
>
> *Morris v. E. I. Dupont de Nemours & Company*, 8 Cir., 1934, 68 F.2d 788 teaches that the determination of fraudulent joinder is to be based on whether there was a real intention on colorable grounds to

---

[11] Plaintiffs point out that Mr. Hull's deposition has not been taken yet. (Doc. 8 at 20 ¶ 40).

[12] To the extent that *Parks* is not directly on point from a factual standpoint, the court adopts its fraudulent joinder principles as persuasive authority in support of its ruling here.

procure a joint judgment. Doubt as to whether under the state law a case of joint liability is stated, <u>or doubt with respect to the allegations concerning the resident defendants being false as when the question depends upon the credibility of witnesses or the weight of evidence will not render the joinder fraudulent</u>. On the other hand, there must be some reasonable basis for believing that there is joint liability. The joinder is fraudulent if it is clear that, under the law of the state in which the action is brought, the facts asserted by the plaintiff as the basis for the liability of the resident defendant could not possibly create such liability so that <u>the assertion of the cause of action is as a matter of local law plainly a sham and frivolous</u>. And a joinder is fraudulent if the facts asserted with respect to the resident defendant are shown to be so clearly false as to demonstrate that no factual basis existed for any honest belief on the part of plaintiff that there was joint liability.

*Parks v. New York Times Co.*, 308 F.2d 474, 477 (5th Cir. 1962) (emphasis added).

As pled in their complaint, Plaintiffs' theory of liability against Mr. Hull is that he played a part in the fatal accident by "suddenly accelerat[ing] at a high rate of speed contributing to the Defendant Monson losing control of the tractor/trailer." (Doc. 1-5 ¶ 7); (*see also* Doc. 8 at 19 ¶ 39 ("Th[e affidavit] testimony does not foreclose the likelihood that Richard Hull violated the Alabama Rules of the Road in terms of passing a vehicle moving in the same direction."); *id.* at 20-21 ¶ 42 ("Hull's affidavit attached to the motion for summary judgment raises serious doubts as to whether Hull acted appropriately in attempting to pass a tractor trailer that was entering the lane his vehicle occupied.")). In his affidavit, Mr. Hull indicates that he accelerated in order to get in front of the tractor-trailer being driven by Mr. Monson

15

and "out of his way" to avoid being struck or "forced further off of the road and completely into the median." (Doc. 1-3 ¶ 2).

To agree with the Removing Defendants that they have clearly and convincingly shown that Plaintiffs fraudulently joined Mr. Hull, the court would have to resolve all questions of credibility and weigh all evidence in favor of Mr. Hull on the wrongful death action that Plaintiffs have, from all appearances, in good faith reasonably asserted against him. However, *Parks* expressly forbids this court from undergoing such a merits-focused evaluation of the evidence when deciding contested matters of fraudulent joinder.[13] *See also Taylor Newman Cabinetry, Inc. v. Classic Soft Trim, Inc.*, 436 Fed. App'x 888, 891 (11th Cir. 2011) ("We agree with the district court: Valencia's deposition testimony did not foreclose the possibility that Plaintiffs could state a cause of action against him for negligence under Florida law."); *id.* at 892 ("Given Valencia's role in overseeing the safety procedures, the question of whether he personally participated in the alleged tort depends on the credibility of his testimony[; consequently,] [f]raudulent joinder was therefore not a proper basis for removal to federal court." (citing *Parks*, 308 F.2d at 477)); *cf. Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329 (11th Cir. 2011) ("To determine whether it is possible that a state

---

[13]   These principles from *Parks* are entirely consistent with the significant burden placed upon a removing party to show by clear and convincing evidence the existence of fraudulent joinder.

court would find that the complaint states a cause of action, we must necessarily look to the pleading standards applicable in state court, <u>not the plausibility pleading standards prevailing in federal court</u>.") (emphasis added).

Post-*Bonner* Eleventh Circuit binding precedent similarly confirms that the Removing Defendants' credibility-driven efforts at establishing fraudulent joinder through a motion for summary judgment filed by their non-diverse co-defendant fall short:

> <u>In terms of this circuit's law, the main point for us is this one</u>:  For a Plaintiff to present an arguable claim against an in-state defendant and, therefore, to require a case removed to federal court to be remanded to state court, <u>the plaintiff need not show that he could survive in the district court a motion for summary judgment filed by that in-state defendant</u>. For a remand, the <u>plaintiff's burden is much lighter than that</u>: after drawing all reasonable inferences from the record in the plaintiff's favor and then resolving all contested issues of fact in favor of the plaintiff, there need only be "a reasonable basis for predicting that the state law might impose liability on the facts involved." *B., Inc.*, 663 F.2d at 550 (quoting *Bobby Jones Garden Apartments*, 391 F.2d at 177) (emphasis added). Because the procedures are similar while the substantive standards are very different, <u>district courts must exercise extraordinary care to avoid jumbling up motions for remand and motions for summary judgment that come before them</u>.
>
> In the remand context, the district court's authority to look into the ultimate merit of the plaintiff's claims <u>must be limited to checking for obviously fraudulent or frivolous claims</u>. Although we have said that district courts may look beyond the face of the complaint, we emphasize that <u>the district court is to stop short of adjudicating the merits of cases that do not appear readily to be frivolous or fraudulent</u>. Applying these principals to this case, we conclude that the district court—given the

record before it—should have remanded the case to state court and should have never addressed the motion for summary judgment.

*Crowe*, 113 F.3d at 1541-42 (emphasis added).

Mr. Hull may ultimately prevail on summary judgment, but it is also possible that he will not. Further, *Crowe* cations against a district court's putting the merits-based cart before the jurisdictional horse. Because, consistent with both *Parks* and *Crowe*, Plaintiffs' wrongful death action against Mr. Hull is not overtly frivolous or fraudulent, this court lacks subject matter jurisdiction. *Cf. Legg v. Wyeth*, 428 F.3d 1317, 1321, 1322 (11th Cir. 2005) (reversing district court's taxation of attorney's fees and costs against removing defendant and finding unrebutted affidavits offered by drug company's sales representatives showing that (i) one was not a forum resident, (ii) one had no involvement with the diet drug, and (iii) one lacked sufficient knowledge of health risks associated with the diet drug were sufficient to establish "objectively valid and reasonable" removal premised upon fraudulent joinder).[14]

---

[14] In reversing the district court's decision to tax attorney's fees and costs against the removing party, the panel in *Legg* attempts to distinguish *Crowe* on the basis that *Crowe* involved "sworn statements submitted by *both* the defendants and the plaintiffs." *Legg*, 428 F.3d at 1323 (emphasis in original). However, the *Crowe* decision does not emphasize the existence of competing sworn statements as the driving force behind its reasoning; instead, *Crowe* focuses upon what it means for a plaintiff to bring an <u>arguable</u> state law claim against a resident defendant and likens the standard to screening for <u>apparent</u> (versus debatable) frivolous claims under Rule 11. *See* Fed. R. Civ. P. 11(b)(2) ("By presenting to the court a pleading . . . an attorney certifies that to the best of the person's knowledge, information, and belief,

C.      **Application of *Lowery* to Removing Defendants' Amount in Controversy Burden**

Alternatively, remand is independently appropriate because the Removing Defendants have not satisfied their amount in controversy burden under *Lowery*. Regarding this particular diversity-driven prong, "where a plaintiff has made an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the . . . jurisdictional requirement." *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356-57 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1072 (2000); *see also McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S. Ct. 780, 785, 80 L. Ed. 1135 (1936) ("And where they are not so challenged the court may still insist that the jurisdictional

---

formed after an inquiry reasonable under the circumstances . . . the claims . . . are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law[.]"). To the extent that the *Legg* decision is inconsistent with the fraudulent joinder framework utilized in *Crowe* and *Parks*, the court notes that within the Eleventh Circuit, the first panel decision controls. *See, e.g., United States v. Hogan*, 986 F.2d 1364, 1369 (11th Cir. 1993) ("[I]t is the firmly established rule of this Circuit that each succeeding panel is bound by the holding of the first panel to address an issue of law, unless and until that holding is overruled en banc, or by the Supreme Court."); *Cargill v. Turpin*, 120 F.3d 1366, 1386 (11th Cir. 1997) ("The law of this circuit is 'emphatic' that only the Supreme Court or this court sitting en banc can judicially overrule a prior panel decision.").

facts be established or the case be dismissed [or remanded], and for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence."); *Lowery*, 483 F.3d at 1211 ("Significantly, if a defendant can only carry the burden of establishing jurisdiction under these circumstances, then the defendant could have satisfied a far higher burden than preponderance of the evidence.").

In assessing the propriety of removal, "the court considers the documents underline(received by the defendant from the plaintiff) . . . and determines whether that document and the notice of removal unambiguously establish federal jurisdiction." *Lowery*, 483 F.3d at 1211 (emphasis added)."If [the removing documents do] not [readily show the requisite amount in controversy], the court must remand." *Id.* In *Lowery*, the Eleventh Circuit was at a loss to determine by what means it could make an informed assessment of the amount in controversy because the damages were unspecified and only the bare pleadings were available. *Id.* at 1210.

Similarly, in this case, the court finds that the allegations of the amount in controversy made in the notice of removal coupled with the unspecified damages contained in the complaint are insufficient to establish satisfaction of the amount in controversy requirement consistent with *Lowery*'s leaving no room for doubt standard. In its notice of removal, the Removing Defendants admit that Plaintiffs'

20

complaint "does not specify a total amount of damages" (Doc. 1 ¶ 9), but then mistakenly and unpersuasively cite to *Roe*, a § 1446(b)(1) removal, as their primary authority for why they have met their amount in controversy burden.[15]

After spending several paragraphs drawing comparisons to *Roe* (which comparisons are dubious, given that *Roe* involves a § 1446(b)(1) removal and the opinion expressly distances itself from impacting *Lowery*), the Removing Defendants, without pointing to any document received by them from Plaintiffs other than the complaint, summarily suggest that they have satisfied the amount in controversy requirement:

> [I]f liability and damages are proven according to the law that controls the theories set forth in Plaintiffs' Complaint, the jury in this cause could reasonably return a verdict in excess of Seventy-Five Thousand Dollars ($75,000.00). However, Defendants Marten and Monson do not admit or contend that they are liable to Plaintiffs and do not admit or contend that Plaintiffs' damages necessarily exceed Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs. Instead, these Defendants assert that based upon the legal theories asserted in Plaintiffs' Complaint, and the applicable Alabama law governing damages under those theories, Plaintiffs will seek and ask a jury to return a verdict in an amount, sum, or value in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs in this cause.

(Doc. 1 ¶ 15 (emphasis added)).

---

[15]   The Removing Defendants also unhelpfully cite to *Lindsay v. American General Life & Accident Ins. Co.*, 133 F. Supp. 2d 1271 (M.D. Ala. 2001), a non-binding pre-*Lowery* district court opinion.

Even though *Roe*, like this lawsuit, is an Alabama wrongful death action, such an amount in controversy statement is insufficient under *Lowery*'s holding that a removing party must show the existence of federal jurisdiction without any ambiguity when removing under § 1446(b)(3). 483 F.3d at 1214. Furthermore, while the Removing Defendants' conclusion may turn out to be accurate, their belief about what would be a reasonable jury verdict (while simultaneously refusing to admit the validity of that pivotal figure), is simply not the relevant standard for this court to use when measuring the propriety of their removal.

In their petition, the Removing Defendants do not even acknowledge the existence of *Lowery*,[16] much less explain (i) how their removal satisfies that precedent,  (ii) how their removal is distinguishable from *Lowery* although it also arises under § 1446(b)(3), or (iii) how the Eleventh Circuit has since clarified, modified, refined, questioned, or overruled *Lowery*'s binding application to §

---

[16] While the Removing Defendants' opposition to the Remand Motion does mention *Lowery* (Doc. 12 at 7 ¶ 9; (addressing timeliness); *id.* at 10 ¶ 14 (same); *id.* at 18 ¶ 26 (citing *Pretka* for mentioning *Lowery*, but failing to acknowledge any distinction drawn about which type of removal is at issue), their response fails to do so in any manner which recognizes the Eleventh Circuit's significant distinction in how it treats removals arising under § 1446(b)(1) versus § 1446(b)(3).

1446(b)(3) removals in either an en banc published decision or otherwise.[17] While this court recognizes that the requisite amount in controversy likely does exist, especially given that this case is a wrongful death action, "[i]f the court asserts jurisdiction on the basis of the defendant's speculative assertions, it implicitly accepts rank speculation as reasonable inquiry [per Rule 11].This could undermine the requirement of reasonable inquiry not only in removal situations, but also in other contexts." *Lowery*, 483 F.3d at 1215 n.67.

As *Lowery* explains, "the district court has before it only the limited universe of evidence available . . . [and] if that evidence is insufficient to establish that removal was proper or that jurisdiction is present, neither the defendants nor the court may speculate in an attempt to make up for the notice's failings." *Id.* at 1214-15; *see also Lindsey v. Ala. Tel. Co.*, 576 F.2d 593, 595 (5th Cir. 1978) (holding that "it was not open for defendants to attempt to show" the requisite amount in controversy per capita where the complaint made insufficient allegations, "[n]or was it open to the district court to speculate that such was in fact the case"). "Under § 1446(b)[(3)], the operative document must unambiguously establish federal jurisdiction." *Belkin v. Home Depot U.S.A., Inc.*, No. 07-61368-CIV, 2007 WL 4247685, at *1 (S.D. Fla.

---

[17] Because it is binding precedent, only the Eleventh Circuit sitting en banc or the United States Supreme Court has the power to formally overrule *Lowery*. *See Hogan* and *Turpin*, *supra*, at 18 n.14.

Dec. 3, 2007) (citing *Lowery*, 483 F.3d at 1214); *see also Bosky v. Kroger Texas, LP*, 288 F.3d 208, 211 (5th Cir. 2002) ("holding that the document must be 'unequivocally clear and certain'")).

Therefore, when evaluating § 1446(b)(3) removals, "jurisdiction is either evident from the removing documents or remand is appropriate." *Lowery*, 483 F.3d at 1211; *see id.* ("If the jurisdictional amount is either stated clearly on the face of the documents before the court, or readily deducible from them, then the court has jurisdiction."). "The absence of factual allegations pertinent to the existence of jurisdiction is dispositive and, in such absence, the existence of jurisdiction should not be divined by looking to the stars." *Id.* at 1215. Accordingly, the Removing Defendants have not satisfied their preponderance of evidence standard applicable in § 1446(b)(3) removals by unambiguously establishing the amount in controversy as mandated under *Lowery*, and the case is due to be remanded for lack of subject matter jurisdiction for this additional reason.[18]

---

[18]   In their opposition, the Removing Defendants point out that, in *Pretka*, the Eleventh Circuit agreed that "[n]othing in *Lowery* says a district court must suspend reality or shelve common sense in determining whether the face of a complaint, or other document, establishes the jurisdictional amount." 608 F.3d at 770 (internal quotation marks omitted) (quoting *Roe*, 637 F. Supp. 2d at 999). However, that particular statement, taken out of context, is *dicta*, as the Eleventh Circuit expressly clarified shortly thereafter that it did not need to reach the common sense contention because other evidence existed in *Pretka* to substantiate the amount in controversy:

**IV.   CONCLUSION**

As explained above, the court lacks subject matter jurisdiction, and Plaintiffs' Remand Motion is due to be granted. Additionally, Plaintiffs' unopposed Expedited Ruling Motion is due to be granted, and because the exhibits challenged by Plaintiffs have no impact upon and are entirely unrelated to the merits of the court's jurisdictional ruling, Plaintiffs' Strike Motion is due to be termed as moot. Finally, the court leaves unaddressed Plaintiffs' Sanctions Motion and the Motion for Summary Judgment filed by Mr. Hull and instead leaves both of them for the state court to dispose of upon remand. The court will separately enter an order consistent with this memorandum opinion and remand this lawsuit to the Circuit Court of St. Clair County, Alabama.

**DONE** and **ORDERED** this the 12th day of March, 2014.

VIRGINIA EMERSON HOPKINS
United States District Judge

---

Nonetheless, we need not look solely to the complaint and the named plaintiffs' contracts that are attached to it, and have no occasion to express any view on how we would decide this case if that were the only evidence of the amount in controversy. It is unnecessary for us to answer that question, and we imply no view on it, because there is more evidence in this case.

*Pretka*, 608 F.3d at 770 (emphasis added).